258 P.3d 1288 (2011)
244 Or. App. 299
In the Matter of M.T., Alleged to be a Mentally Ill Person.
STATE of Oregon, Respondent,
v.
M.T., Appellant.
09503MC; A144286.
Court of Appeals of Oregon.
Submitted June 6, 2011.
Decided July 13, 2011.
*1289 James A. Palmer filed the brief for appellant.
John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Deputy Solicitor General, filed the brief for respondent.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and DUNCAN, Judge.
DUNCAN, J.
The trial court committed appellant to the custody of the Oregon Health Authority (OHA) on the ground that, as a result of a mental disorder, appellant was dangerous to himself and others. Appellant assigns error to the trial court's failure to provide him with information as required by ORS 426.100(1). For the reasons explained below, we conclude that the trial court committed plain error and reverse.[1]
The relevant facts are procedural and undisputed. Appellant came before the trial court for a civil commitment hearing. Appellant appeared via closed circuit television from the county jail. He was represented by appointed counsel, who was present in the courtroom where the hearing was being held. The court informed appellant that "the purpose of this hearing is to determine whether you suffer from a mental disorder, and if you do, whether as a result of that, you're a danger to yourself, or to others, or you're unable to care for your basic personal needs." The court told appellant that it had appointed counsel to assist him; that the state would call witnesses who would be subject to cross-examination; and that appellant could call his own witnesses after that. The court asked appellants counsel whether he had "review[ed] with [appellant] the nature of the hearing, and the proceedings." Appellant's counsel answered that he had "attempted to do so." The court did not inform appellant of the possible results of the proceeding or his right to subpoena witnesses.
The state called witnesses who testified that appellant suffered from paranoid schizophrenia and was a danger to others. Appellant's counsel called appellant's mother, who is his legal guardian, as a witness. Appellant's mother did not dispute the state's evidence; indeed, she added that appellant's schizophrenia made him a danger to himself. However, she testified that, because of concerns about how appellant had been treated in state facilities in the past, she had "made other arrangements for his care and treatment."
After the presentation of evidence, the trial court concluded that appellant suffered from a mental disorder and, as a result, was dangerous to himself and others. The court committed appellant to the custody of OHA for a period of up to 180 days.
ORS 426.100(1) requires a trial court conducting a civil commitment hearing to advise the allegedly mentally ill person of the reason for, nature of, and possible results of the hearing, as well as the person's rights to subpoena witnesses and be represented by counsel, including appointed counsel. It provides:
"At the time the allegedly mentally ill person is brought before the court, the court shall advise the person of the following:
"(a) The reason for being brought before the court;
"(b) The nature of the proceedings;
"(c) The possible results of the proceedings;
"(d) The right to subpoena witnesses; and
"(e) The person's rights regarding representation by or appointment of counsel."
*1290 The required advice is "essential to the allegedly mentally ill person's understanding of the nature and purpose of the hearing[.]" State v. Maxwell, 164 Or.App. 171, 172, 988 P.2d 939 (1999), rev. den., 330 Or. 71, 994 P.2d 133 (2000). It is an "integral part" of the legislature's attempt "to ensure that all allegedly mentally ill persons get the benefit of a full and fair hearing[.]" State v. Allison, 129 Or.App. 47, 50, 877 P.2d 660 (1994).
A trial court must advise an allegedly mentally ill person of the information specified in ORS 426.100(1) regardless of whether the person is represented by counsel. Allison, 129 Or.App. at 50, 877 P.2d 660 ("Whether or not [an allegedly mentally ill person] is represented by counsel, the court must inform [the person] of the nature and possible outcome of the proceeding."). To comply with that requirement, a court "must either advise the allegedly mentally ill person directly regarding those rights or conduct an examination on the record to determine whether a valid waiver of the right to be advised has been knowingly and voluntarily made." State v. Ritzman, 192 Or.App. 296, 298, 84 P.3d 1129 (2004) (citing State v. May, 131 Or.App. 570, 571, 888 P.2d 14 (1994)).
A trial court's failure to advise an allegedly mentally ill person as required by ORS 426.100(1) "is not only error, but it is plain error that we [may] exercise our discretion to consider despite an appellant's failure to raise and preserve the issue at the hearing." Ritzman, 192 Or.App. at 298, 84 P.3d 1129 (citing State v. Tardanico, 132 Or.App. 230, 231, 888 P.2d 15 (1994) (trial court's failure to provide the required information was an error "apparent on the face of the record" and "an egregious one")). In determining whether to exercise our discretion, "we also consider whether the error was harmless." Ritzman, 192 Or.App. at 299, 84 P.3d 1129 (citing State v. Cach, 172 Or.App. 745, 750 n. 4, 19 P.3d 992, rev. den., 332 Or. 316, 28 P.3d 1176 (2001)).
As we have held, the legislature enacted ORS 426.100(1) to ensure that, before a civil commitment hearing, an allegedly mentally ill person is given "sufficient productively usable information to enable the person to take the actions necessary to protect his or her interests." State v. Baffam, 166 Or.App. 552, 556, 999 P.2d 541 (2000), rev. dismissed as improvidently allowed, 335 Or. 142, 61 P.3d 938 (2002). Accordingly, we have held that a trial court's failure to provide an allegedly mentally ill person with the information specified in ORS 426.100(1) is harmless when the person received the information from another source. For example, in Ritzman, we held that the trial court's failure to comply with ORS 426.100(1) was harmless where, before the commitment hearing, a written "Notice of Intent to Continue Commitment" that contained all of the information specified in ORS 426.100(1) was delivered to, read to, and signed by the appellant. 192 Or.App. at 300-01, 84 P.3d 1129. In contrast, in State v. Scharf, 201 Or.App. 71, 74, 116 P.3d 949 (2005), we held that the trial court's failure to comply with ORS 426.100(1) was not harmless where the allegedly mentally ill person had received a written "Citation for Commitment Hearing" that contained information similar to that specified in ORS 426.100(1) but had not signed it. We explained that, "without an acknowledgement from appellant that he actually read the citation, we cannot conclude that he was adequately advised of his rights as we did in Ritzman." Scharf, 201 Or.App. at 74, 116 P.3d 949.
Applying the foregoing legal principles, we conclude that the trial court erred by failing to advise appellant as required by ORS 426.100(1) and that the error is reviewable as plain error. Ritzman, 192 Or.App. at 298, 84 P.3d 1129. As appellant points out and the state acknowledges, the court failed to advise appellant of all of the information specified in ORS 426.100(1). Specifically, the court failed to advise appellant of the "possible results of the proceedings," as required by ORS 426.100(1)(c), and of appellant's "right to subpoena witnesses," as required by ORS 426.100(1)(d). The court's failure to comply with ORS 426.100(1) was a legal error, and it is apparent on the face of the record.
The state does not contend otherwise. Instead, the state argues that we should not *1291 exercise our discretion to correct the trial court's error because it was harmless. As described, when determining whether a court's failure to provide the information specified by ORS 426.100(1) was harmless, we consider whether the allegedly mentally ill person otherwise received the information the legislature intended the person to receive in order to protect his or her own interests.
The state argues that appellant was notified of the possible results of the hearing through a written "Notice of Commitment Hearing," which appellant received before the hearing and which included, as an attachment, a mental health investigator's report. According to the state, the investigator's report lists actions the trial court could take. The difficulty with the state's argument is that the listed actions are those that the court could take following the investigation, not following a later commitment hearing. The listed actions relate to whether the trial court should proceed to a commitment hearing and, if so, whether appellant should be held pending the hearing.[2] They do not relate to the possible results of the hearing.
ORS 426.130 establishes the possible results of a civil commitment hearing. If, following the presentation of evidence, a trial court determines that the allegedly mentally ill person is not mentally ill, "the person shall be discharged forthwith." ORS 426.130(l)(a). If, on the other hand, the court determines that the person is mentally ill, there are three possible results. If the person "is willing and able to participate in treatment on a voluntary basis" and "will probably do so," the court "[s]hall order the release of the [person] and dismiss the case." ORS 426.130(1)(b)(A). Alternatively, the court "may order conditional release," ORS 426.130(1)(b)(B), or "may order commitment of the individual to the [OHA]," ORS 426.130(1)(b)(C). If the court orders conditional release or commitment, the court shall establish a period of conditional release or commitment not to exceed 180 days. ORS 426.130(2).
Information about the possible results of the proceedings is essential to an allegedly mentally ill person's ability to prepare for and participate in a commitment hearing. It is basic information about what is at stake for the person, information that will affect the person's assessment about how much, and in what manner, to prepare for the hearing. Importantly, it includes information about possible resultsvoluntary treatment and conditional releasethat can be secured only with the cooperation of the allegedly mentally ill person. Without notice of those possible results, a person is not in a position to adequately protect his or her interests.
The investigator's report, on which the state relies, did not inform appellant of the possible results of the hearing. It did not inform appellant that he was facing up to 180 days in custody, information that was necessary for him to understand the significant potential consequences of the hearing on his personal liberty. Nor did it inform him that, if he could establish that he was a candidate for voluntary treatment or conditional release-perhaps by agreeing to and advocating for the arrangements his mother had made for him-he could avoid or minimize that consequence. Thus, the report did not provide appellant with the same information that the trial court was required to provide under ORS 426.100(1), and the fact that appellant received a copy of the report does not render harmless the court's failure to comply with ORS 426.100(1).
The state also argues that the trial court's failure to advise appellant of the possible results of the hearing was harmless because appellant was represented by counsel. Representation by counsel does not, in and of itself, render a trial court's failure to comply with ORS 426.100(1) harmless. See, e.g., Scharf, 201 Or.App. at 74, 116 P.3d 949 (reversing judgment committing the appellant, who was represented by counsel, on the ground that trial court failed to comply with ORS 426.100(1)); Allison, 129 Or.App. at 50, 877 P.2d 660 (same). Representation by counsel can render a court's failure to comply *1292 with ORS 426.100(1) harmless if the record establishes that counsel adequately advised the allegedly mentally ill person of the information specified in ORS 426.100(1), but the record in this case does not establish that appellant's counsel did so. It does not establish that appellant's counsel told appellant anything about the possible results of the hearing. As described above, the trial court asked appellant's counsel whether he had "review[ed] with [appellant] the nature of the hearing, and the proceedings." Appellant's counsel answered that he had "attempted to do so." For two reasons, appellant's counsel's answer does not establish that he advised appellant about the possible results of the commitment hearing. First, it was in response to a question about whether he had advised appellant of the nature of the hearing and proceedings, the subject of ORS 426.100(1)(b), as opposed to the possible results of the hearing, the subject of ORS 426.100(1)(c). Second, and more importantly, even assuming that the court's question encompassed the possible results of the hearing, appellant's counsel answered that he had "attempted" to provide information to appellant, which indicates that did not provide all of the required information. Thus, as with the investigator's report, the record in this case provides no basis for concluding that appellant's counsel provided appellant with the information necessary to render harmless the court's failure to comply with ORS 426.100(1).[3] Accordingly, we exercise our discretion to correct the error.
Reversed.
NOTES
[1] Appellant also assigns error to the trial court's commitment decision, arguing that there was insufficient evidence that he was "mentally ill." ORS 426.005(1)(e). We reject that assignment without discussion.
[2] The listed actions are part of a printed form the investigator used for his report, and each is preceded by a space that an investigator can check if the investigator recommends that the trial court take that action.
[3] Because we conclude that the trial court's failure to advise appellant of the possible results of the civil commitment hearing, as required by ORS 426.100(1)(c), is reviewable as plain error, we reverse on that ground and do not reach appellant's argument that the trial court also erred by failing to advise him of his right to subpoena witnesses, as required by ORS 426.100(1)(d).